# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 3:14-bk-01847-JAF |
| 412 Boardwalk, Inc. and | |
| 422 Boardwalk, Inc., | |
| | Jointly administered with |
| Debtors. | Case No. 3:14-bk-01848-JAF |
| _____/ | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case is before the Court upon Creditor's, ARS Investors I LP-2011-1 Jax, Motion for Relief from the Automatic Stay (Doc. 23)[1], to which Debtors, 412 Boardwalk, Inc. and 422 Boardwalk, Inc., filed a Response. (Doc. 61). The Creditor also filed a Motion to Dismiss Debtors' Jointly Administered Chapter 11 Cases (the "Motion to Dismiss") (Doc. 55), to which Debtors filed a Response (Doc. 60). The Court held a hearing on the Motions on August 1, 2014, after which the parties filed their respective briefs (Docs. 63, 64). The Court, having heard the testimony and examined the evidence presented, having observed the candor and demeanor of the witnesses, and having considered the arguments of counsel, makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

412 Boardwalk, Inc. ("412 Boardwalk") is a for-profit Florida corporation that owns commercial property located at 412 1st Street North in Jacksonville Beach, Florida (the "412 Property"). The 412 Property consists of a 13,983 square foot site improved with a 8,997 square

---

[1] Creditor also filed a Motion for Relief from the Automatic Stay (Doc. 20) in In re 422 Boardwalk, Inc., Case No 3:14-bk-01848-JAF, which has been jointly administered with case In re 412 Boardwalk, Inc., Case No, 3:14-bk-01847 since June 2, 2014. This Motion is almost identical to the Motion for Relief from the Automatic Stay (Doc. 23) filed in In re 412 Boardwalk, Inc., Case No, 3:14-bk-01847.

1

foot restaurant and bar, The Pier Cantina and Sandbar (the "Restaurant"). 422 Boardwalk, Inc. ("422 Boardwalk"), is also a for profit Florida corporation that owns two lots in Jacksonville Beach (the "422 Property").[2] The 422 Property consists of a 28,695 square foot site minimally improved with a surface parking lot and is located at 422 1St Street North, Jacksonville Beach, Florida 32250; the 422 Property is immediately adjacent to 412 Property. In addition, both Properties are oceanfront properties.

The Properties are located in the Central Business District of Jacksonville Beach and are surrounded by commercial uses, bars, nightclubs and restaurants. Specifically, the property directly north is improved with a public surface parking lot for the pier. The property directly west is improved with a public surface parking lot and the Ritz Lounge. The property directly south is improved with a commercial building, which has changed tenancy over the years, but is generally occupied as a bar or nightclub. Thus, the Properties are well suited for commercial or mixed use because of their size, zoning, proximity to commercial uses and heavy pedestrian and vehicular traffic as well as adjacent land uses, and other physical and functional features.

The Properties were purchased for a future development as oceanfront properties. At the time the 412 Property was acquired, it consisted of a single, two story, commercial building; the building was leased to a tenant, a computer company, which unfortunately left after the economy faltered. Any efforts to sell or lease the building were unsuccessful and the building was vacant for over a year. In 2010, Debtors' principal, Chris Hionides (the "Principal"), was approach by three entrepreneurs, Benjamin Porter, Richard Trendel and Luis Cuevas (the "Entrepreneurs"), with a business opportunity. The Entrepreneurs proposed to renovate the building to operate a restaurant. The Principal and the Entrepreneurs invested approximately $1 million, including the Principal's personal investment of $350,000.00, to complete renovations. As part of the

---

[2] The term "Properties" in this Order refers to both the 412 Property and the 422 Property.

renovation effort, the parking lots located on the 422 Property were improved and the 422 Property now serves as a parking lot for the Restaurant's customers.

In August of 2010, the Properties were leased to the current tenant, Peerless Brands, LLC ("Peerless"), the operator of the Restaurant for a period of ten years.[3] Pursuant to the lease agreement, Peerless pays $12,000.00 per month, to Debtors to rent the Properties. While negotiating the rental rate for the Properties, the Entrepreneurs and the Principal considered the investment of the parties to renovate the building and concluded that, under the circumstances, a rate of $12,000.00 per month constituted a fair rental rate. Upon completion of the renovations, Peerless took possession of the Properties. The Principal is a minority (25%) owner of Peerless, but he does not participate in its operations or its finances. The venture has apparently been successful and the Restaurant generates a profit. The Principal receives $12,000.00 per month in distributions for his share in Peerless.

The Properties are encumbered by two mortgages. Specifically, Debtors executed a Consolidated Payment Note (the "First Note") in the principal amount of $2,610,401.00, which consolidated Debtors' previous notes. The First Note is secured by a mortgage encumbering the Properties. The monthly payment on the First Note, prior to the Creditor's notice of default, was $16,820.00 including 6% interest in the amount of $12,175.00. Debtors also executed the Corrective Mortgage Modification and Extension Agreement (the "Second Note") in the principal amount of $493,887.00, which is secured by another mortgage encumbering the Properties. The monthly payment on the Second Note, prior to the Creditor's notice of default, was $3,380.00 including 4.25% interest in the amount of $1,665.00.

---

[3] While the lease agreement provides it was entered into between Peerless and 412 Boardwalk, Debtors established that the parties to the agreement intended the 422 Property to be used by Peerless as parking for the Restaurant.

Despite the Restaurant's success, Debtors struggle financially. Pursuant to its 2012 income tax return, 412 Boardwalk reported $112,209.00 in gross rents while its expenses totaled $198,648.00 generating a loss in the amount of $86,439.00. The 2013 income tax return disclosed that 412 Boardwalk received income from gross rents in the amount of $149,430.00 while its expenses totaled $523,445.00 generating a $374,015.00 loss. Nevertheless, the Principal was able to make the payments on both Notes. In fact, the Principal made payments on the Notes even when Debtors generated no income in previous years. The Principal explained that he was able to make these payments because Debtors received "capital infusions" from his individual funds and from funds of his other "affiliated companies." Unfortunately, as his financial flexibility has diminished, the Principal chose not to pay property taxes for the Properties. It is undisputed that Debtors' failure to pay any sums they are required to pay constitutes an event of default upon which Creditor may accelerate the debt and foreclose the mortgages.

In 2011, the Notes were sold by a traditional lender to Creditor, a non-traditional lender, who purchases mortgages secured by, primarily, "distressed assets." At some point in time, Creditor obtained other notes secured by mortgages on several other properties controlled by the Principal. During 2013, Creditor prompted the Principal about Debtors' delinquent property taxes, and the parties started negotiating a resolution of the issue. The Principal was led to believe that Creditor would advance Debtors' delinquent property taxes and Debtors would sign a short term note for the tax advancements. Creditor made a payment in the amount of approximately $365,000.00 to cover the outstanding property taxes for 2009 and 2010 for the Properties. The Principal paid delinquent property taxes for 2011. In July of 2013, Creditor, through a notice of default, demanded that Debtors reimburse it for the payment of the 2009 and 2010 property taxes plus accrued interest and attorney's fees in a lump sum. The Principal

testified that at that time Creditor also requested payment of property taxes on several properties securing other notes belonging to Creditor and gave him 10 days to comply with its request. The Principal requested a 30-day extension, but he was unsuccessful. Creditor also approached tenants who were renting several of the Principal's properties, informed them that the Principal would lose his properties and requested that tenants make rental payments directly to Creditor. This action created panic among tenants. Upon the expiration of the ten-day period, Creditor accelerated the Notes' balances. Specifically, Creditor imposed a default interest of 25% on the First Note and 18% on the Second Note. Creditor also initiated a foreclosure action against both Properties and the state court concluded that Debtors failed to show cause as to why a final judgment of foreclosure should not be entered. However, the final judgment of foreclosure has not been entered. The Principal entered into negotiations with Creditor to forbear from foreclosing on the Properties and other properties, which proved to be slow and unsuccessful.

In order to stop the accrual of the default rate of interest on both Notes and to preserve his property, the Principal filed bankruptcy petitions on behalf of Debtors on April 18, 2014. Pursuant to Schedule E, 412 Boardwalk has four unsecured creditors: 1) the Florida Department of Revenue with a claim of $816.45; 2) the Principal with a claim of $542,015.17[4]; 3) Styles Construction with a claim of $17,000.00; and 4) Triple S. Fire Protection with a claim of $22,000.00 totaling $581,015.17. 422 Boardwalk has no unsecured creditors. Creditor claims that, as of the Petition Date, Debtors owe $3,741,912.71[5]; the Principal is certain this amount is inaccurate. For the purposes of the Motions for Relief from the Automatic Stay, the Court

---

[4] Even though the Principal testified he does not receive any salary from the Debtors and that there are not any outstanding notes between himself and the Debtors, the evidence established he paid himself $45,150.00 from the Debtors' funds during the period from April 1, 2013, to April 1, 2014. (Creditor's Ex. 9). The Principal, at the hearing, was unable to explain why he paid himself such an amount.

[5] As Debtors indicated in their post-hearing brief, Creditor's debt was scheduled as disputed and as of the date of the hearing, Creditor had not filed proofs of claim. (Doc. 64 at 1).

concludes that, as of the Petition Date, Debtors owed Creditor $3,741,912.71. Furthermore, the property taxes for 2012 and 2013 for the Properties in the amount of $182,000.00 remain unpaid.[6]

On June 9, 2014, the Court entered an Interim Order Granting Debtor's Motion for Authority to Use Cash Collateral and ordered 412 Boardwalk to pay adequate protection payments to Creditor. Thereafter, Creditor received: 1) $25,680.00 on June 11, 2014, and 2) $11,564.00 on July 7, 2014. Creditor has been receiving rent payments from Peerless prior to the Petition Date. For instance in March of 2014, before Debtors filed their respective petitions, Creditor received $12,840.00. Furthermore, prior to the hearing, the Principal signed an Assignment of Economic Interests assigning his interests and benefits, including distributions from Peerless, to Debtors so that an additional $12,000.00 per month is available to assist Debtors in funding their plan of reorganization. Lastly, to the extent rental income generated by the Properties and Peerless' monetary distributions are insufficient, the Principal testified he is willing to make capital contributions to fund payments and any operating shortfalls.

## Conclusions of Law

Upon filing a petition for bankruptcy, an automatic stay is imposed. In re Laurent, 208 Fed.Appx. 724, 724 (11th Cir. 2006). Section 362(d), which sets forth the grounds for granting relief from the automatic stay, provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
> (A) the debtor does not have an equity in such property; and

---

[6] Debtors claim that their plan of reorganization will provide for payment of the property taxes over a sixty month period post-confirmation. (Doc. 61 at 5).

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d). "[T]he Court must lift the stay if the movant prevails under either of the two grounds." In re Elmira Litho, Inc., 174 B.R. 892, 900 (Bankr. S.D.N.Y. 1994). Here, Creditor seeks relief pursuant to §§ 362(d)(1) and 362(d)(2). The Court will address Creditor's claims in turn.

### Creditor's Claim Under § 362(d)(1)

A movant seeking relief from the automatic stay under § 362(d)(1) "must demonstrate a factual and legal right to the relief that it seeks." In re Elmira Litho, Inc., 174 B.R. at 902. In other words, the party seeking relief from the automatic stay must establish a prima facie case of cause for relief. In re George, 315 B.R. 624, 628 (Bankr. S.D. Ga. 2004). Absent such showing, relief from the effect of the stay will be denied. In re Bogdanovich, 292 F.3d 104, 110 (2d. Cir. 2002). Because "cause" is not further defined in the Bankruptcy Code, relief from the stay for cause is a discretionary determination made on a case-by-case basis. Laguna Assocs. Ltd. P'ship, 30 F.3d 734, 737 (6th Cir. 1994). A petition filed in bad faith justifies granting relief from the automatic stay. In re Dixie Broad., Inc., 871 F.2d 1023, 1026 (11th Cir. 1989) (citing In re Natural Land Corp., 825 F.2d 296 (11th Cir. 1987)). There is no particular test for determining whether a debtor has filed a petition in bad faith and courts may consider any factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions or, in particular, factors which evidence that the petition was filed to delay or frustrate the legitimate efforts of secured creditors to enforce their rights."[7] In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir. 1988) (internal quotations omitted).

---

[7] The factors include the following inquiries: (1) Is there a realistic possibility of an effective reorganization? (2) Does the debtor only possess a few assets? (3) Does the debtor only have a few unsecured creditors whose claims are small in relation to the claims of secured creditors? (4) Does the debtor have few employees? (5) Is the debtor's

Debtors concede and the Court recognizes that certain of the objective bad faith factors considered by the Eleventh Circuit in Phoenix Piccadilly are present in the instant case. Specifically, each Debtor has only one asset, the Properties subject to a foreclosure action as a result of the nonpayment of property taxes, and Debtors have no employees. 412 Boardwalk has few unsecured creditors whose claims are relatively small compared to the claims of the secured creditors and 422 Boardwalk has none. It is also undisputed that Debtors' financial problems arose when Debtors elected not to pay property taxes which constituted a default on the Notes. However, the Court agrees with Debtors' argument that the appearance of some of the objective bad faith factors from Phoenix Piccadilly cannot be determinative in any given case, as virtually every reorganization case in the current market exhibits certain of the Phoenix Piccadilly factors. Also, the Court does not overlook the fact that Debtors have been timely paying mortgage payments for years even when they had no income. The Court must also consider the fact that the Principal and the Entrepreneurs invested approximately $1 million to improve the value of the Properties and to create an opportunity for Debtors to generate income. Debtors' choice of not paying property taxes is unacceptable and cannot be condoned. However, Creditor utilized a questionable method to compel the Principal to pay the outstanding taxes by ambushing him with a demand for payment of the Properties' outstanding taxes together with payment of other outstanding property taxes on many other properties controlled by the Principal and gave him ten days to cure these defaults. Otherwise, Creditor threatened it would accelerate several notes. In addition, Creditor rejected Principal's request for a thirty-day extension. The Principal believes

---

property subject to a foreclosure action as a result of arrearages on the debt? (6) Do the debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in a pending state court action? and (7) Does the timing of the debtor's filing evidence an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights? Phoenix Piccadilly, 849 F.2d at 1394; In re Natural Land Corp., 825 F.2d at 298. The "list of factors is not exhaustive; nor is there any single factor that will necessarily lead to a finding of bad faith." Natural Land Corp., 825 F.2d at 298.

that if he had thirty days, he would be able to come up with the amount sufficient to cover the outstanding property taxes on the Properties. Furthermore, the Court notes that the Principal in good faith engaged in an eight-month-long negotiation on behalf of Debtors to resolve the financial issues while Creditor was accruing default interest on the Notes. Once the prolonged negotiations proved unsuccessful, the Principal sought protection under the Bankruptcy Code. The Court finds that the circumstances of this case do not establish the petitions were filed in bad faith. The Court also finds Creditor failed to establish that the current adequate protection payments are insufficient to protect Creditor's interest or that it would suffer irreparable injury, loss or damage if the stay is not lifted.[8] For this reason, the Court denies Creditor's request to lift the stay on this ground.

### Creditor's Claim Under § 362(d)(2)

To obtain relief from the stay under § 362(d)(2), a debtor must have no equity in the property and the property must not be necessary to an effective reorganization. In re Lamelas, No. 12–26067–AJC, 2013 WL 324028 at *5 (Bankr. S.D. Fla. Jan. 28, 2013). "Both parts must be satisfied before relief can be granted." In re Moulton, 393 B.R. 752, 766 (Bankr. N.D. Ala. 2008). The Movant has the burden of demonstrating that a debtor has no equity, and the debtor has the burden of demonstrating that the property is necessary to an effective reorganization. In re Lamelas, 2013 WL 324028 at *2.

The Court need not conduct a thorough analysis of whether there is equity in the Properties because the Court finds that the Properties are necessary for an effective

---

[8] In the Motion to Lift the Automatic Stay, Creditor claims that the value of its lien is declining as a result of the non-payment of the debt, plus the accrual of interest and additional costs and expenses incurred by Creditor in an attempt to protect its security interest. (Doc. 23 at 8). Creditor claims it has not received adequate protection, but Debtors established Creditor has been receiving adequate protection payments. (Doc. 23 at 9). Creditor claims that its hardship outweighs any potential prejudice to Debtors or their estate. (Doc. 23 at 8). However, Creditor failed to specify to what extent, if any, monthly adequate protection payments paid by Debtors fail to cover "accrual of interest and additional costs and expenses." (Doc. 23 at 8). The Court will not perform any independent calculations to determine if Creditor's assertion is accurate.

reorganization. The Properties are the primary source of Debtors' income, which stems from the lease with Peerless and Peerless' distributions. Thus, Peerless' continued successful operation of the Restaurant on the Properties is key to the reorganization of the Debtors. Thus, the Motions for Relief from the Automatic Stay will be denied.

### Creditor's Claim Under 11 U.S.C. § 1112

Section 1112(b)(1) provides that the court shall dismiss a case under Chapter 11 for cause. Section 1112(b)(4) sets forth a nonexhaustive list of grounds that may constitute "cause" for dismissal.[9] In re Schultz, 436 B.R. 170, 174 (Bankr. M.D. Fla. 2010). "[T]he determination of

---

[9] Section 1112(b)(4) provides as follows:

For purposes of this subsection, the term 'cause' includes--

(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(B) gross mismanagement of the estate;

(C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;

(D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;

(E) failure to comply with an order of the court;

(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

(G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

(H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);

(I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

(J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;

(K) failure to pay any fees or charges required under chapter 123 of title 28;

(L) revocation of an order of confirmation under section 1144;

cause under § 1112(b) is 'subject to judicial discretion under the circumstances of each case.'" In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984) (quoting In the Matter of Nancant, 8 B.R. 1005 (Bankr. D. Mass. 1981)). The burden rests with the moving party to establish "cause" for dismissal. In re Schultz, 436 B.R. at 174. "In evaluating a § 1112(b) motion to dismiss, all doubts are to be resolved in favor of a debtor." In re Chris-Marine U.S.A., Inc., 262 B.R. 118, 124 (Bankr. M.D. Fla. 2001). "Additionally, a court should be reluctant to dismiss a case or to grant relief that will effectively end any chance for reorganization when confirmation, the natural end of the carefully designed Chapter 11 process, looms soon in the future." Id. at 125.

Here, Creditor claims that the cases should be dismissed for three reasons: 1) the petitions were filed in bad faith; 2) there is substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; and 3) Debtors have grossly mismanaged the estate. (Doc. 55 at 8). The Court will address Creditor's contentions in turn.

**Debtor's Good Faith**

A case should be dismissed for cause if the petition was not filed in good faith. In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984). What amounts to bad faith is the same for both proceedings on a motion to dismiss and a motion for relief from the automatic stay. Phoenix Piccadilly, 849 F.2d at 1394. For the reasons stated above, the Court finds that Debtors filed their respective petitions in good faith.

---

(M) inability to effectuate substantial consummation of a confirmed plan;

(N) material default by the debtor with respect to a confirmed plan;

(O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and

(P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

## Substantial or Continuing Loss to or Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation

*To determine if there is a continuing loss to or diminution of the estate, the court must* look beyond financial statements and fully evaluate the present condition of the debtor's estate. In re Motel Props., Inc., 314 B.R. 889, 894 (Bankr. S.D. Ga. 2004). Negative cash flow and an inability to pay current expenses as they come due can satisfy the continuing loss to or diminution of the estate standard for purposes of § 1112(b). In re Gateway Access Solutions, Inc., 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007). Section 1112(b)(4)(A) "is written in the conjunctive; therefore, it requires both a loss to or diminution of the estate and an absence of a reasonable likelihood of rehabilitation." In re Motel Props., Inc., 314 B.R. at 895. Creditor claims that Debtors have failed to pay property taxes and that they cannot show they are capable of paying those taxes from their only source of income, $12,000.00 per month from their rental agreement. Debtors claim that Creditor made tax payments for the property taxes due for 2009 and 2010 while Debtors paid the property taxes for 2011. Debtors further claim that the 2012 and 2013 taxes will be paid over sixty months at the statutory interest rate pursuant to Debtors' plan of reorganization and that amounts for future property tax obligations, which are not yet due, will be set aside from post-petition revenues.

Debtors also established at the hearing that they have alternative sources of income. Specifically, the Principal assigned his financial interest from Peerless to Debtors in the amount of $12,000.00 per month and the Principal testified he was willing to make capital contributions to cover any operating shortfalls of Debtors to fund any post-confirmation obligations. Therefore, the Court finds that there is no continuous loss to or diminution of the estate and there

is no need to address whether there is an absence of a reasonable likelihood of rehabilitation at this time. The Court will deny the Motion to Dismiss on this ground.

**Gross Mismanagement of the Estate**

The example of [cause provided in § 1112](b)(4)(B) focuses on the management of the estate and not on the debtor. 3 Collier on Bankruptcy ¶ 1112.04[5][c], p. 1112-15 (16th ed. 2013). However, "[t]he inquiry cannot include mismanagement by the debtor prior to the bankruptcy filing." Id.; see also In re Sunnyland Farms, Inc., No. 14–10231 TA, 2014 WL 4443491 at *4 (Bankr. D.N.M. Sept. 9, 2014) (stating "[u]npaid prepetition taxes are not relevant in the cause analysis" while discussing § 1112(b)(4)(I)); In re Rent–Rite Super Kegs West Ltd., 484 B.R. 799, 809 (Bankr. D. Colo. 2012) (pre-petition gross mismanagement is not cause under § 1112(b)(4)(B) because the estate is a post-petition entity).

Creditor claims that Debtors' failure to pay property taxes for years 2009, 2010, 2012 and 2013 evidences Debtors have grossly mismanaged the estate. It is undisputed that Debtors owe significant property taxes to the Duval County Tax Collector. Debtors claim that their plan of reorganization will provide for payment of the outstanding prepetition property taxes over a sixty (60) month period post-confirmation. (Doc. 61 at 5). Since the bankruptcy proceedings began, Debtors have drafted and filed a plan of reorganization and have maintained property insurance. Debtors have also been paying adequate protection payments to Creditor pursuant to the Court's order. There is no evidence of mismanagement, let alone gross mismanagement, post-petition.

For this reason, the Court will deny the Motion to Dismiss and will enter separate orders consistent with these Findings of Fact and Conclusions of Law.

**DATED** this 24 day of October, 2014 at Jacksonville, Florida.

_____
**JERRY A. FUNK**
United States Bankruptcy Judge